**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| DRK Photo, | ) | CV 12-8093-PCT-PGR |
| Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | **ORDER** |
| The McGraw-Hill Companies, Inc., et al., | )<br>)<br>) | |
| Defendants. | )<br>) | |

     Plaintiff DRK Photo ("DRK"), a stock photography agency, alleges that Defendant McGraw-Hill ("McGraw"), a textbook publisher, infringed DRK's copyright by exceeding the scope of license restrictions pertaining to certain photographs or failing to obtain permission to use the photographs. (Doc.1.)

     The parties have filed motions for partial summary judgment. (Docs. 79, 97.) Because the Court concludes that DRK lacks exclusive ownership of the photos at issue, and therefore lacks standing to sue, the Court will grant partial summary judgment in favor of McGraw and deny DRK's motion.[1]

## BACKGROUND

     DRK executes agreements with photographers pursuant to which the photographers grant DRK the right to include certain of the photographers' works in DRK's collection of stock photographs. DRK then offers to license those images to publishers such as McGraw.

---

[1] The parties' requests for oral argument will be denied. The parties have fully briefed the issues and oral argument will not aid in the Court's decision. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

With respect to the images at issue here, DRK entered into agreements ("Representation Agreements") with photographers pursuant to which DRK would serve as the photographers' "agent with [] respect to the sale or leasing of the photographs or transparencies which [the photographer had] delivered to [DRK] and shall deliver to [DRK] in the future."[2] (Doc. 99-1, Ex. 3; *see* Doc. 98, ¶¶ 4–7.)

In 2008, DRK initiated a program to register copyrights for the photographs in its collection. DRK asked photographers to sign a form agreement ("Assignment Agreement"), under which the photographers would grant DRK the right to assert copyright infringement claims for those photographs in its collection. The agreement, entitled "Copyright Assignment, Registration, and Accrued Causes of Action Agreement," provided:

> The undersigned photographer, the sole owner of the copyrights in the undersigned's images ("the Images") selected by DRK PHOTO ("DRK") and included in DRK's collection, hereby grants to DRK all copyrights and complete legal title in the Images. DRK agrees to reassign all copyrights and complete legal title back to the undersigned immediately upon completion of the registration of the Images, as evidenced by DRK's receipt of a Certificate of Registration from the United States Copyright Office for such Images, and resolution of infringement claims brought by DRK relating to the Images.
>
> The undersigned agrees and fully transfers all right, title and interest in any accrued or later accrued claims, causes of action, choses in action—which is the personal right to bring a case—or lawsuits, brought to enforce copyrights in the Images, appointing and permitting DRK to prosecute said accrued or later accrued claims, causes of action, choses in action or lawsuits, as if it were the undersigned.
>
> Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided and paid 50% for the undersigned and 50% for DRK.

(*See* Doc. 99-1, Ex. 7; Doc. 99-2, Ex. 9.)

DRK attached the Assignment Agreements to an email message explaining:

> With the digitization of imagery, the added exposure of the internet, and the relative ease of obtaining (and distributing) digital copies of images, most importantly those images appearing on the DRK PHOTO website, we feel that

---

[2] The Representation Agreements with photographers Tom Bean, Peter French, Wayne Lankinen, John Gerlach, George Sanker, M.P. Kahl, Dan Cheatham, Michael and Cynthia Ederegger provided that DRL acted a "sole and exclusive agent." (Doc. 98, ¶ 5.) McGraw does not move for summary judgment with respect to these photographs.

addressing possible copyright infringement is of the utmost importance. With a Certificate of Registration in hand (prior to a copyright infringement) we will be in a much stronger position with much more leverage for settling copyright infringement claims.

Please note that this Agreement is not a permanent assignment; per the Agreement "DRK agrees to reassign all copyrights and complete legal title back to the undersigned immediately upon completion of the registration of the Images, as evidenced by DRK's receipt of a Certificate of Registration from the United States Copyright Office for such Images, and resolution of infringement claims brought by DRK relating to the Images." The Agreement further explains that "Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses, and attorney's fees, be divided and paid 50% for the undersigned and 50% for DRK.

We see this as a win/win situation with no cost to you, the photographer. You receive the piece [sic] of mind of knowing that many of your images will be registered with the United States Copyright Office, and with this Agreement we receive the authorization necessary to initiate and settle copyright infringement claims brought against would be infringers of DRK PHOTO Images.

(Doc. 99-2, Ex. 8.)

The Court must determine if these agreements confer standing to DRK.

## DISCUSSION

McGraw contends that DRK does not have an exclusive copyright interest in the photographs and therefore lacks standing to bring copyright infringement claims. DRK also argues that DRK is collaterally estopped from arguing that it has standing because the identical issue was litigated in *John Wiley & Sons, Inc. v. DRK Photo*, --- F.Supp.2d ----, 2014 WL 684829 (*"Wiley"*) (S.D.N.Y. February 21, 2014), where the court ruled against DRK on the standing issue. McGraw also contends that a number of the photos at issue are not properly registered. It seeks summary judgment with respect to 978 of the 1120 images.[3] (Doc. 97 at 17.)

**A.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3] This figure represents the photos taken by photographers for whom DRK was acting as the non-exclusive agent. (*See* Doc. 97 at 13.)

together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

**B.    Standing**

Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right. 17 U.S.C. § 501(b); *see Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc). Section 106 of the Copyright Act lists the "exclusive rights" that can be held, which include the right to reproduce the copyrighted work, to prepare derivative works based on the work, and to distribute copies of the work by selling, renting, leasing, or lending. *See* 17 U.S.C. § 106.

As the Ninth Circuit recently noted, "Absent from the list of exclusive rights is the right to sue for infringement." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). Accordingly, "the assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue." *Id.* (citing *Silvers*, 402 F.3d at 890). When determining whether a contract has transferred exclusive rights, courts "look not just at the labels parties use but also at the substance and effect of the contract." *Id.* (citing *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 503–04 (9th Cir. 1987)).

DRK, as the plaintiff in this action, has the burden of establishing that it has standing. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc. ("Minden II")*, --- F.Supp.2d ----, 2014

1  WL 295854, at *3 (N.D.Cal. January 27, 2014) (citing *Wash. Evmtl. Council v. Bellon*, 732

2  F.3d 1131, 1139 (9th Cir. 2013)).

3  **C.**   ***John Wiley & Sons, Inc. v. DRK Photo***

4       In *Wiley*, DRK asserted copyright infringement claims against the publisher John

5  Wiley & Sons. The court considered and rejected each of the bases for standing asserted by

6  DRK. DRK raises the same argument for standing here.

7       First, DRK claimed that its agency Representation Agreements with the photographers

8  transferred a "co-ownership" interest in exclusive rights under 17 U.S.C. § 106. The court

9  found that the record, including the language of the Agreements themselves, provided

10  "uncontroverted proof that the Representation Agreements are nonexclusive licenses." *Wiley*,

11  2014 WL 684829, at *11. The court explained that it was "axiomatic that if the

12  Representation Agreement did not specify that exclusive rights were being transferred, no

13  such rights were in fact transferred." *Id.* (contrasting Representation Agreements wherein

14  DRK acted as "sole and exclusive agent").

15       The court determined that "DRK's contention that the Representation Agreements

16  transferred exclusive rights to it fails not only as a factual matter, but also as a legal matter."

17  *Id.* The court explained that "Section 101 of the Copyright Act makes clear that transfer of

18  ownership of an exclusive right cannot be accomplished by a nonexclusive license." *Id.* It

19  also noted that "there is not a single case finding standing based on a non-exclusive

20  representation agreement" and cited *Minden II*, in which the court was "presented with a

21  similar representation agreement between Wiley and another stock photography agency [and]

22  rejected the agency's argument that the nonexclusive representation agreement in that case

23  conferred standing on the plaintiff." *Id.*

24       The court concluded that the "Representation Agreements here granted DRK a

25  nonexclusive license to engage in certain exclusive rights granted to the photographers under

26  the Copyright Act; they did not—indeed, they could not have, by dint of their non-

27  exclusivity—grant DRK ownership of exclusive rights under Section 106, as DRK contends,

28

- 5 -

1    or the copyrights at issue." *Id.*

2        The court next addressed DRK's argument that it was a "beneficial owner" of the

3    copyrights because the Representation Agreements entitled it to one-half of the proceeds

4    under the licenses. *Id.*, at *12. The court rejected this argument, finding that DRK did not

5    have standing to sue as a beneficial owner because it "never possessed legal title in the first

6    place." *Id.* (citation omitted). "The Representation Agreements make clear that DRK is a

7    nonexclusive licensing agent for the photographers. In that capacity, and having never owned

8    the copyrights, DRK does not have standing to maintain a copyright infringement action."

9    *Id.*

10       Finally, the court rejected DRK's argument that the Assignment Agreements

11   conferred standing by authorizing DRK to sue or, alternatively, by transferring ownership

12   in the copyrights. *Id.*, at *13–14. The court explained that "the Copyright Act does not permit

13   'holders of rights under copyrights to choose third parties to bring suits on their behalf.'" *Id.*,

14   at *13 (quoting *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 n. (2d

15   Cir. 1982)).

16       The court also ruled that the Assignment Agreements did not confer standing because

17   they were "no more than disguised assignments of the bare right to sue." *Id.*, at *16. In

18   reaching this conclusion, the court reviewed the relevant case law, including the

19   "substantively indistinct" *Minden Pictures, Inc. v. Pearson Educ., Inc. ("Minden I")*, 929 F.

20   Supp. 2d 962, 968–70 (N.D. Cal. 2013). *Id.*, at *15. In that case, as in *Wiley*, "under the terms

21   of the agreement, the transferor retained all exclusive rights as to the copyright." *Id.*

**D.    Analysis**

22

23       1.   Collateral estoppel

24       McGraw contends that DRK is estopped from raising the standing arguments here that

25   it litigated and lost in *Wiley*.

26       Collateral estoppel "preclude[s] relitigation of both issues of law and issues of fact if

27   those issues were conclusively determined in a prior action." *United States v. Stauffer Chem.*

28

*Co.,* 464 U.S. 165, 170–71 (1984). The purpose of the doctrine is "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

Collateral estoppel applies if the following requirements are met: there was a full and fair opportunity to litigate the issue in the previous action, the issue was actually litigated in that action, the issue was lost as a result of a final judgment in that action, and the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).

Collateral estoppel may be used defensively against a plaintiff when the plaintiff had a "full and fair chance" to litigate the same issue against a different defendant. *Blonder–Tongue Lab., Inc. v. Univ. Ill. Found.*, 402 U.S. 313, 333 (1971); *see Parklane Hosiery Co.*, 439 U.S. at 329–31. "Findings made in one proceeding in which a party has had a full and fair opportunity to litigate may be used against that party in subsequent litigation." *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996); *see Minden Pictures*, 2013 WL 1995208, at *7 .

Only one of the collateral estoppel requirements is contested here. In *Wiley*, DRK raised the same arguments for standing that it advances in this case. (*See* Doc. 79 at 3–8.) DRK had a full and fair opportunity to litigate the standing issue in *Wiley*, and the issue was actually litigated. The only disputed question is whether the DRK's loss on the standing issue was the result of a final judgment.

DRK contends that the ruling in *Wiley* was not final for collateral estoppel purposes. DRK relies on *St. Paul Fire & Marine Ins. v. F.H.*, 55 F.3d 1420 (9th Cir. 1995), for the proposition that a partial summary judgment order can never have preclusive effect for collateral estoppel purposes. In *St. Paul*, the court held that an adverse partial summary judgment ruling in a case that settled prior to entry of final judgment did not collaterally estop the plaintiff from re-litigating the same issue. *Id.* at 1425. Although other courts in this

circuit have reached a different conclusion,[4] "the *St. Paul* decision, while stopping short of articulating a black and white rule, strongly suggests that partial summary judgment orders by their very nature are not sufficiently firm to have a preclusive effect on any future proceedings." *Householder Group, LLLP v. Van Mason*, Nos. CV-09-2370-PHX-MHM, CV-10-918-PHX-MHM, 2010 WL 5093117, at *2 (D.Ariz. December 8, 2010).

The holding in *St. Paul* calls into question the preclusive effect of the partial summary judgment order in *Wiley*. Accordingly, the Court finds that collateral estoppel does not apply to the standing issue.

2.  DRK does not have standing

Even without according the decision preclusive effect, the Court is persuaded by the analysis in *Wiley* and in other cases that have found similar assignment agreements insufficient to confer standing. *See Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-cv-1431-PAB-DW, 2014 WL 1055975, (D.Colo. March 19, 2014); *Viesti v. Pearson Educ., Inc.*, No. 11–cv–1687–PAB–DW, 2014 WL 1053772 (D. Colo. March 19, 2014); *Minden II*, 2014 WL 295854, at *5 (N.D.Cal. January 27, 2014); *Minden I*, 929 F.Supp.2d 962, 968–69 (N.D.Cal. 2013). These cases establish that DRK is neither a legal nor beneficial owner of the copyrights.

Neither the Representation Agreements nor the Assignment Agreements transfer legal ownership to DRK. The Representation Agreements are non-exclusive licenses. Section 101 of the Copyright Act defines "transfer of copyright ownership" as an "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a

---

[4] *See, e.g.*, *Sec. People, Inc. v. Medeco Sec. Locks, Inc.*, 59 F.Supp.2d 1040, 1045 (N.D.Cal. 1999), *aff'd*, 243 F.3d 555 (Fed.Cir. 2000) ("A disposition by summary judgment is a decision on the merits, and it is as final and conclusive as a judgment after trial."); *Wade v. Roper Industries, Inc.*, No. 13-cv-3885-NC, 2013 WL 6732071, at *4 (N.D.Cal. December 20, 2013) (noting that state court's partial summary judgment on order in wrongful termination case had preclusive effect "because although no final judgment was issued in the state court action, the issue of whether a causal link existed between Wade's alleged protected activity and [the employer's] termination of Wade was a final decision on the merits.").

copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, *but not including a nonexclusive license*." 17 U.S.C. § 101 (emphasis added); *see Wiley*, 2014 WL 684828, at *11. The Agreement did not grant DRK any *exclusive* rights under 17 U.S.C. § 106. *Id.*; *see Minden II*, 2014 WL 295854, at *5.

With respect to the Assignment Agreements, in "substance and effect," *Righthaven*, 716 F.3d at 1169, they conveyed to DRK nothing more than the "bare right to sue." *Wiley*, 2014 WL 684829, at *16 (citing *Minden I*, 929 F.Supp.2d at 968). In *Minden I* the court detailed the factors it considered in finding the copyright assignments did not convey any exclusive rights for standing purposes:

> The sole function of the copyright assignment is to grant an exclusive license to bring suit and divvy up any returns; there is no right to participate in any royalties apart from the litigation. Beyond the express terms, the parties' intent is also evident from what is missing from the agreement: a term specifying the duration of the license. Instead, the copyright assignment terminates automatically upon conclusion of any litigation with the reassignment of "co-ownership" back to the copyright owners. If the parties genuinely intended to transfer co-ownership, under the terms of the contract Minden would retain that co-ownership in perpetuity if it failed to bring suit. Such a reading would put Minden on coequal footing with the copyright owners. The copyright assignments, however, cannot reasonably be read in this manner. Implicitly, the contracting parties intended for Minden to bring the instant suit and not for it to be a genuine, potentially-permanent owner of any of the exclusive rights under Section 501(b).

929 F.Supp.2d at 968–69. The same considerations apply to the Assignment Agreements in this case.

Nor is DRK a beneficial owner of the copyrights. "District courts in the Ninth Circuit have narrowly defined 'beneficial owner' as being only an individual who had legal title and parted with it in exchange for royalties." *Minden II*, 2014 WL 295854, at *10 (*citing Ray Charles Foundation v. Robinson*, 919 F.Supp.2d 1054, 1067 n.11 (C.D.Cal. 2013); *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003). Pursuant to the Representation Agreements, "DRK is a nonexclusive licensing agent for the photographers." *Wiley*, 2014 WL 684829, at *12. Having never owned the copyrights, DRK cannot be a "beneficial owner" with standing to sue. *Id.*; *see Minden I*, 2014 WL 295854, at *8, 11(noting that "a number of courts have found that licensing agents are neither legal nor

beneficial owners of a copyright" and holding that plaintiff "is not a 'beneficial owner' in the images since it is not nor has it been a legal owner of the copyrighted works").

DRK contends that the Supreme Court's recent ruling in *Lexmark* calls into question the standing analysis undertaken in these cases. The Court disagrees.

First, the holding in *Lexmark* does not address, let alone alter, the test for standing under 17 U.S.C. § 501(b). *See Lexmark*, 134 S. Ct. at 1385 n.2 ("Other aspects of the parties' sprawling litigation, including Lexmark's claims under federal copyright and patent law . . . , are not before us. Our review pertains only to Static Control's Lanham Act claim."). In *Lexmark* the Court considered only whether the respondent fell "within the class of plaintiffs whom Congress has authorized to sue" for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). *Id.* at 1387.

Section 1125(a)(1) authorizes suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising. In *Lexmark* the Court set out to the proper analytical framework for interpreting this broad statutory language. 34 S. Ct. at 1388. The Court concluded that "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 1391. Neither the formulation of this framework nor its application in *Lexmark* has the effect of expanding § 501(b) to grant standing to those without a legal or beneficial ownership of an exclusive right.

In *Lexmark* the Court characterized the zone-of-interests and proximate causation test as "supply[ing] the relevant background *limitations* on suit under 1125(a)." *Id.* (emphasis added). The Court's holding cannot plausibly be viewed as expanding standing under a different statute. *Lexmark*'s zone of interest and proximate cause tests are of no assistance to DRK because DRK, as neither a legal nor beneficial copyright owner, does not have standing to sue under the plain language of 15 U.S.C. § 501(b). *Cf. Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601-EMC, 2014 WL 1724478 (N.D.Cal. April 29, 2014) (discussing *Lexmark*'s effect on standing issue and noting that "Minden lacked a legal or

beneficial interest in an exclusive right under 15 U.S.C. § 106.")

DRK also cites *Alaska Stock, LLC v. Pearson Educ., Inc.*, No. 3:11-cv-00162-TMB, --- F.Supp.2d ----, 2013 WL 5496788, at *5–7 (D.Alaska Sept. 11, 2013), and the decision in the parallel arbitration proceeding, in which the arbitrator held that DRK had standing to sue. For the reasons pointed out by the *Wiley* court, neither of these decisions supports a finding that the Assignment Agreements conferred standing on DRK.

The court in *Alaska Stock* explained that standing would not be established "where the assignor labels an assignment a transfer of ownership, but expressly reserves the exclusive rights in the copyright to itself. These fact are not present here." 2013 WL 5496788, at *7. By contrast, in this case and in *Wiley*, "This is exactly what DRK sought to achieve, as evidenced by the terms of the proffered agreements and its correspondence with photographers." *Wiley*, 2014 WL 684829, at *25 n.16.

In the parallel arbitration proceeding, the arbitrator held that DRK had standing to sue because the Assignment Agreements conferred more than the bare right to sue and therefore the holding in *Righthaven* was inapplicable. (Doc. 112-1, Ex. B.) As the *Wiley* court noted, "the arbitrator expressly left open the potential for the Court to come to the opposite conclusion." 2014 WL 684829, at *16. The arbitrator explained that:

> nothing in this Final Award should be construed to bar Wiley from attempting to develop a more complete factual record in the copyright infringement litigation between the parties currently pending in the Southern District of New York and to argue there that the assignments are a sham under *Righthaven.* I conclude only that the assignments are not rendered a sham under *Righthaven* given the record presented here, particularly in view of my hesitancy as an arbitrator to extend existing copyright law, a task which more appropriately should be within the domain of the federal courts with full appellate review.

(Doc. 112-1, Ex. B at 3.)

The *Wiley* court departed from the arbitrator's "narrow" reading of *Righthaven*, and instead followed "the Ninth Circuit's admonition that courts should 'consider the substance of the transaction' to determine if any exclusive rights were granted to the licensee." 2014 WL 684829, at *16 (quoting *Righthaven*, 716 F.3d at 1170). The court reiterated that "no

1   exclusive rights could have been granted to DRK because the photographers, except for Bean

2   and French, had only granted DRK a nonexclusive license" and concluded that "[j]ust like

3   the plaintiff in *Righthaven*, DRK, equipped with nothing more than a nonexclusive license,

4   cannot obtain standing to sue under the Assignment Agreements that, in substance, convey

5   nothing more than a bare right to sue." *Id.*

6                                   **CONCLUSION**

7          For the reasons set forth above, with respect to the images at issue in McGraw's

8   motion for partial summary judgment, the Court concludes that DRK is not the legal or

9   beneficial owner of an exclusive right under a copyright and therefore does not have standing

10  to sue for infringement of that right.[5]

11         IT IS HEREBY ORDERED granting Defendant McGraw's motion for partial

12  summary judgment (Doc. 97).

13         IT IS FURTHER ORDERED denying Plaintiff DRK's motion for partial summary

14  judgment (Doc. 79).

15         DATED this 10th day of June, 2014.

16

17                                   _____

18                                   Paul G. Rosenblatt
                                     United States District Judge

19

20

21

22

23

24         _____

25         [5] McGraw also contends that certain photos taken by Stephen Krasemann and Doug
    Perrine were previously published works and improperly registered as unpublished. (Doc.
26  97 at 15–17.) DRK acknowledges the error but contends that the registrations are effective
    under 17 U.S.C. § 411(b) and the doctrine of "innocent error." (Doc. 112 at 16.) Having
27  determined that DRK does not have standing under 17 U.S.C. § 501(b), the Court does not
    address this issue.

28